## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | |
|---|---|
| BETTY WARREN, )<br>)<br>　　　　Plaintiff, )<br>)<br>v. )<br>)<br>SOLO CUP COMPANY, )<br>)<br>　　　　Defendant. )<br>) | Case No. 04-2270 |

## OPINION

On December 1, 2004, Plaintiff Betty Warren filed a three count complaint against Defendant Solo Cup Company alleging sex discrimination pursuant to Title VII of the Civil Rights Act of 1964, a claim under the Equal Pay Act (EPA), and a claim under the Family and Medical Leave Act (FMLA). On April 14, 2006, Solo Cup filed a Motion for Summary Judgment (#10). The matter is now fully briefed, and for the reasons that follow, the Motion for Summary Judgment is GRANTED.

### FACTS

Solo Cup, a supplier of disposable cups and plates, hired Warren as a packer on August 23, 1999. When she was hired, Warren's rate of pay was $6.04. After thirty days, Warren received a pay increase of twenty-seven cents per hour in accordance with Solo Cup's normal pay adjustment procedures. Warren applied for a tool crib attendant position effective March 6, 2000. Warren did not get an increase in pay when she was transferred to the tool crib position because she was earning

more for than the minimum wage for a tool crib attendant when she started in that position.  After 30 days, she was given a pay adjustment of twenty-six cents per hour.  Thus, as of April 10, 2000, Warren was earning $6.57 per hour.  After 90 days, Warren received a pay adjustment of thirty-six cents per hour, bringing her hourly wage to $6.93.  On her one year anniversary in the tool crib position, Warren received an additional twenty-eight cents per hour, bringing her total wage to $7.21 per hour on March 5, 2001.  Warren received an additional pay increase of thirty-one cents per hour on March 4, 2002, bringing her total pay to $7.52 per hour.

  The tool crib in which Warren worked utilizes the MP2 Program, a computerized inventory and parts control program.  Prior to utilizing this program, the tool crib conducted hand inventories using a card system.  After the MP2 Program was put in place, tool crib attendants were required to do  significantly more computer work.  Eugene Beckler is the plant manager at Solo Cup, and Ed Holzhauer serves as the plant engineer.  Beckler and Holzhauer decided to add a third shift tool crib attendant to the staff.  Under this new plan, the day shift attendants were to receive parts, the second shift was to cycle count, and the third shift was to perform data entry into the computer and ensure all orders were entered into the computer by 7:00 a.m.

  During this time, Don Lorenz was also hired to work as a tool crib attendant.  Lorenz was initially hired as a security guard in August 2001 with a starting pay of $6.50 per hour, a rate higher than Warren's starting pay.[1]  When the security department was eliminated, Lorenz was transferred to the tool crib position.  Lorenz was given a raise when he moved to the tool crib position.[2]  Tony

---

[1] At the time Lorenz was transferred to the tool crib, he was earning $1.12 more per hour than Warren was at the time she was transferred to the tool crib.

[2] Prior to being transferred to the tool crib position, Lorenz was making $7.43 per hour, and when he was transferred he began making $7.75 per hour.  On January 20, 2003, Lorenz's

Peyton, the head of the Human Resources department, testified this raise was based on Lorenz's "computer skills and his potential; we thought that his capabilities and his background were deserving of that increase." When Lorenz was hired, he held a Bachelor's degree in anthropology and two Master's degrees from the University of Illinois. Some of the courses Lorenz took had computer science components. Peyton was aware Lorenz had computer skills from college courses he took while working on his degrees and that he had a home computer with which he worked. Although not listed in the job description for tool crib attendant, Holzhauer believed a very computer literate person was necessary for the proposed third shift tool crib attendant position. Holzhauer was aware Lorenz had college degrees and was very familiar with computers. Warren testified that she was "kind of mediocre" with computers, but believed she could improve with training. Warren also testified that Lorenz "appeared to do more computer work at night than I did."

Nancy Driggers was one of Warren's supervisors and the foreman of the stockroom. Driggers delegated work for Warren to perform. Driggers testified that Warren "just didn't want to work on a computer." Driggers further testified she was "under the impression [Warren] just really didn't want to deal with the computer. She would rather do almost any of the other jobs other than work the computer." Holzhauer testified Warren had "problems with the computer at that time, of entering things into the computer" and that she "did not have an easy time working on the computer." Warren testified that no supervisor ever told her she was not doing an adequate job with the computer.

Eventually, Solo Cup decided not to fill the third shift position in the tool crib. As a result, one tool crib position was eliminated. Warren was then terminated in February 2003. When she

---

pay was increased to $8.11 per hour.

was terminated, Warren was told the reason was she was "generating too many orders."  Warren testified no mention of her computer skills was made at the time of her termination.  Peyton indicated in his deposition that he told Warren her position was being eliminated, and Solo Cup was only going to have one person in the stockroom on second shift.  When Warren asked why she was chosen to be terminated, Peyton informed her it was based on her attendance and performance.

## ANALYSIS

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In ruling on a motion for summary judgment, the court must decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial.  Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994).  In reaching this decision, the court must consider the evidence in the light most favorable to the party opposing summary judgment.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).  The burden of establishing that no genuine issue of material fact exists rests with the movant.  Jakubiec v. Cities Serv. Co., 844 F.2d 470, 473 (7th Cir. 1988).  In her Response to the Motion for Summary Judgment, Warren concedes she cannot establish a prima facie case under the FMLA.  Therefore, only her claims under EPA and Title VII require analysis by this court.

Warren's first claim is that Solo Cup violated the EPA because her hourly pay as a tool crib attendant was less than the hourly pay received by Lorenz.  The EPA, part of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*., prohibits paying male and female workers different wages based solely on gender.  29 U.S.C. § 206(d).  To establish a prima facie case of discrimination under

the EPA, Warren must demonstrate that: (1) different wages were paid to employees of the opposite sex; (2) the employees performed equal work requiring equal skill, effort, and responsibility; and (3) the employees had similar working conditions. Fyfe v. City of Fort Wayne, 241 F.3d 597, 600 (7th Cir. 2001). No proof of discriminatory intent is required under the EPA. Cullen v. Ind. Univ. Bd. of Trs., 338 F.3d 693, 698 (7th Cir. 2003). With regard to the second element of the prima facie case, the court must consider three separate elements of the jobs being compared: skill, effort and responsibility. 29 U.S.C. § 206(d)(1). Each element must be met individually to establish a prima facie case. 29 C.F.R. §1620.14. "Skill includes consideration of such factors as experience, training, education, and ability." 29 C.F.R. 1620.15(a). However, "[p]ossession of a skill not needed to meet the requirements of the job cannot be considered in making a determination regarding equality of skill." 29 C.F.R. 1620.15(a). Furthermore, individual qualifications are irrelevant at this point in the analysis because the issue is comparison of jobs. See Cullen, 338 F.3d at 699.

Once a plaintiff establishes a prima facie case, the employer may offer an affirmative defense by explaining that the pay differential is due to seniority, a merit system, quantity or quality of work product, or "any other factor other than sex." 29 U.S.C. § 206(d); see also Markel v. Bd. of Regents of the Univ. of Wis. Sys., 276 F.3d 906, 913 (7th Cir. 2002). The "any other factor" affirmative defense, which Solo Cup relies on in this matter, is a "broad catch-all exception that embraces an almost limitless number of factors, so long as they do not involve sex." Fallon v. State of Ill., 882 F.2d 1206, 1211 (7th Cir. 1989). This exception insures that courts do not substitute their judgment for that of employers. Fallon, 882 F.2d at 1211. Rather, "[t]he statute asks whether the employer has a reason other than sex-not whether it has a 'good' reason." Wernsing v. Dept. of Human Serv.,

427 F.3d 466, 468 (7th Cir. 2005).  "Education is a relevant consideration in determining whether disparate salaries exist for reasons other than sex."  Cullen, 338 F.3d at 702.

Assuming Warren was able to establish a prima facie case, Solo Cup has established by a preponderance of the evidence that the pay differential was due to a factor other than sex, namely Lorenz's education and skill with computers.  Lorenz holds a Bachelor's degree and two Master's degrees from the University of Illinois.  Lorenz informed Solo Cup that he took computer courses while receiving his education.  Such computer training was important due to the implementation of the MP2 Inventory Control Program at Solo Cup.  Driggers, Warren's supervisor, testified she was "under the impression [Warren] just really didn't want to deal with the computer.  She would rather do almost any of the other jobs other than work the computer."  Holzhauer testified Warren had "problems with the computer at that time, of entering things into the computer" and that she "did not have an easy time working on the computer."  Warren herself testified she was "kind of mediocre" with computers.  Holzhauer was aware Lorenz had two degrees and was very familiar with computers.  Therefore, Solo Cup has sustained its burden of showing the pay differential between Warren and Lorenz was due to a factor other than sex.

The court now turns to Warren's Title VII claim.  A claim of discrimination under Title VII may be proven directly or indirectly.  O'Neal v. City of New Albany, 293 F.3d 998, 1003 (7th Cir. 2002).  Warren lacks any direct evidence of sex discrimination and so her claim must be evaluated under the indirect method of proof as established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Traylor v. Brown, 295 F.3d 783, 787-88 (7th Cir. 2002).  Under this analytic framework, the plaintiff first must establish certain prima facie elements for a case of gender discrimination: (1) she is a member of a protected class; (2) she was performing her job

satisfactorily; (3) she suffered an adverse employment action; and (4) similarly-situated employees outside the protected class were treated more favorably. Traylor, 295 F.3d at 788. If the plaintiff can meet this initial showing, then the burden shifts to the employer to assert a legitimate, nondiscriminatory reason for the challenged action. Simmons v. Chicago Bd. of Educ., 289 F.3d 488, 492 (7th Cir. 2002). The burden then shifts back to the plaintiff to present evidence that would allow the trier of fact to conclude that the employer's proffered reason is pretextual. Simmons, 289 F.3d at 492.

Warren's claim under Title VII based upon her pay differential from Lorenz must fail because Warren is unable to establish her prima facie case in that she has failed to demonstrate she is similarly situated to Lorenz. "A similarly situated employee is one who is 'directly comparable to [the plaintiff] in all material respects.'" Bio v. Fed. Express. Corp., 424 F.3d 593, 597 (7th Cir. 2005), quoting Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002). "In evaluating whether two employees are directly comparable, the court must look at all relevant factors, including whether the employees 'held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications - provided the employer considered these latter factors in making the personnel decision.'" Bio, 424 F.3d at 597, quoting Ajayi v. Aramark Bus. Servs., Inc., 336 F.3d 520, 532 (7th Cir. 2003).

As discussed above, Lorenz and Warren did not have similar qualifications and education in that Lorenz had more training, experience, and skill with computers than Warren. Solo Cup established that these computer skills were necessary due to the implementation of the M2 program in the tool crib. Warren argues that she was similarly situated with Lorenz because: (1) Lorenz's

education was actually a negative factor because his degrees were not relevant to the job; and (2) the decision makers were not aware of Lorenz's computer skills. However, even if the degrees Lorenz received were not directly relevant to his job, the computer skills he acquired during his education were relevant. With regard to Warren's second argument, she admits in her response that Peyton and Holzhauer were aware of Lorenz's professed computer training in college. Accordingly, this court finds these arguments without merit.

As concerns Warren's claim for her termination under Title VII, this court concludes Warren failed to sufficiently allege this claim in her complaint.[3] In her complaint under the heading "Cause of Action Under 42 U.S.C. 2000e (Sex Discrimination)," Warren alleges she was "subjected to unequal terms and conditions of employment because of her sex in that she was paid less for equivalent work than a male employee with less experience and seniority." The only allegations in her complaint which relate to her termination concern her claim under the FMLA, a claim Warren has now abandoned. While the termination claim based upon sex was raised in her EEOC charge, "appending the EEOC charges to the complaint hardly serves as notification that the plaintiff is adding an entirely new count." Conner v. Ill. Dept. of Natural Resources, 413 F.3d 675, 679 (7th Cir. 2005), quoting Wislocki-Goin v. Mears, 831 F.2d 1374, 1381 (7th Cir. 1987). Accordingly, it is apparent Warren is attempting to amend her complaint through her Response to the Motion for Summary Judgment. Warren never filed a motion to amend her complaint. In addition, Solo Cup would not have become aware of this claim through the discovery process. In fact, Warren testified

---

[3] The court notes that in ruling on Defendant's Motion to Strike, it improvidently determined Warren minimally stated a claim for termination under Title VII. However, after having the benefit of reviewing the entire record in ruling on the Motion for Summary Judgment, this court finds otherwise.

in her deposition that the only claim she was pursuing against Solo Cup was that Lorenz was paid more money as a tool crib attendant. Accordingly, this court need not consider this claim.

IT IS THEREFORE ORDERED:

(1) Defendant's Motion for Summary Judgment (#10) is GRANTED.

(2) This case is terminated.

ENTERED this 23rd day of August, 2006

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE